FILED
2016 Sep-27  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOB GLASSCOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO:** |
| | ) | **2:15-cv-1487-KOB** |
| **CITY OF ARGO; OFFICER DAVID** | ) | |
| **RAMSAY MOSES, in his Individual** | ) | |
| **Capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Bob Glasscox sued Argo Police Officer David Moses for using excessive force during an arrest in violation of his constitutional rights and for assault and battery under state law. Officer Moses responded by claiming he was entitled to qualified immunity and moved to dismiss the complaint. (Doc. 19). Officer Moses attached video of the incident from his body camera as an exhibit to his motion. Because Officer Moses's motion presented material outside of the complaint, the court converted the motion into one for summary judgment. *See* (Doc. 25). The court **DENIES** the motion because questions of fact exist about whether Officer Moses used excessive force.

## I.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine

two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

2

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## II.   STATEMENT OF THE FACTS

This case arises out of a confrontation between Mr. Glasscox and Officer Moses on July 24, 2014.[1] The parties do not dispute the fundamental facts of this case, but they greatly dispute their interpretation.

On that day, Mr. Glasscox was driving erratically on Interstate 59 South near the city of Argo. Mr. Glasscox is a Type I diabetic, and his doctor stated in an affidavit that he believed was suffering from a hypoglycemic episode during the incident. The Argo City Police dispatched Officer Moses to intercept Mr. Glasscox after they received reports of a reckless driver on the freeway. Officer Moses located Mr. Glasscox's vehicle and engaged his emergency lights and sirens, signaling for Mr. Glasscox to pull over.

Mr. Glasscox did not comply. Officer Moses pursued Mr. Glasscox for nearly five miles. During the pursuit, Mr. Glasscox swerved his vehicle, often straddling the shoulder of the road and the median. Eventually, Mr. Glasscox drove completely onto the median, crossing towards the northbound side of the interstate. The vehicle stopped right alongside the northbound left-hand lane.

---

[1]These facts are stated in the light most favorable to Mr. Glasscox, the non-movant. The facts proven at trial may be different.

Officer Moses exited his police car and approached Mr. Glasscox's vehicle with his weapon drawn. Although Officer Moses had called in the vehicle's license plate number, he had not received any information concerning Mr. Glasscox's identity or whether any outstanding warrants for his arrest.

Officer Moses opened Mr. Glasscox's driver side door and ordered Mr. Glasscox to lift his hands, unbuckle his seatbelt, and get out of the car. Mr. Glasscox raised his hands but did not comply with the other two instructions. Mr. Glasscox told Officer Moses, "I'm sorry, man."[2] Officer Moses repeated his instruction to unbuckle the seatbelt and get out of the car. Mr. Glasscox unbuckled his seatbelt. Once again, Officer Moses told Mr. Glasscox to "get out." Mr. Glasscox responded, "I'm going to get out. Shut up . . .." Officer Moses then fired his taser, shooting the electric probes into Mr. Glasscox's body. Officer Moses states he deployed his taser because Mr. Glasscox's right arm reached out of view towards the middle seat console and he feared for his own safety.

A tase conveys electricity into the target's body for five seconds. Mr. Glasscox attempted to pull the probes out of his body. Officer Moses ordered him to "stop it" and fired his taser a second and third time, during which he warned Mr. Glasscox that he will "give it to him again" and once again ordered him out of the car. Officer Moses testified he tased Mr. Glasscox again because he was "actively resisting my ability to take him into custody." (Doc. 31-1 at 80). Officer Moses also testified that he could see Mr. Glasscox's hands after the first tase.

Officer Moses then reached into the vehicle and grabbed Mr. Glasscox's wrist. Officer

---

[2]Mr. Glasscox also says something that is difficult to decipher. The parties agree that Mr. Glasscox said either "God damn, man" or "God darn, man."

4

Moses repeated his instruction for Mr. Glasscox to get out of the car and Mr. Glasscox said, "I will." Approximately two seconds later, Officer Moses again ordered Mr. Glasscox to "stop it." Officer Moses appears to place the taser against Mr. Glasscox's leg to administer a contact tase. Mr. Glasscox placed his hand on the taser as Officer Moses tased him for a fourth time. Officer Moses told him to "stop fighting" and to "get out." Officer Moses testified that he tased Mr. Glasscox a fourth time because he "was trying to take the taser out of my hand when it was pressed up against his leg." (Doc 31-1 at 81). Mr. Glasscox contends that he was not actively resisting arrest, but that his physical reactions were a natural reaction to being tased.

Mr. Glasscox then said, "Okay," and exited the vehicle as Officer Moses was holding Mr. Glasscox's left wrist. The total time elapsed from when Officer Moses opened the vehicle door until Mr. Glasscox exited was approximately one minute. Officer Moses then took Mr. Glasscox into custody without incident.

Officer Moses cited Mr. Glasscox for reckless driving, eluding a police officer, and resisting arrest. An Argo Municipal Court convicted Mr. Glasscox on all three offenses. Mr. Glasscox has appealed his conviction to Jefferson County Circuit Court.

## III.   DISCUSSION

### A.    § 1983 Excessive Force Claim

Officer Moses argues that he is entitled to qualified immunity from Mr. Glasscox's § 1983 claim. Qualified immunity protects government officials performing discretionary, job-related functions from litigation unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Qualified immunity is designed to "allow government officials to carry out their

5

discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

Whether an official is entitled to quailed immunity "is a question of law to be decided by the court." *Willingham v. Loughnan*, 261 F.3d 1178, 1184 (11th Cir. 2001). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). If the officer establishes that he has acting within his discretionary authority, the burden then shifts to the plaintiff to demonstrate that the officer is not entitled to qualified immunity. *Lee*, 284 F.3d at 1194.

A two-prong test determines whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the *Saucier* analysis may be performed in any order). First, the court considers whether the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated the plaintiff's constitutional rights. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier*, 533 U.S. at 201). Second, the court asks whether the plaintiff's rights were clearly established under the law. *Gonzalez*, 325 F.3d at 1234.

Mr. Glasscox does not dispute that Officer Moses was acting within his discretionary authority. Therefore, Mr. Glasscox bears the burden to show that Officer Moses violated his clearly established constitutional rights.

### 1.      Constitutional Violation

The Fourth Amendment provides the right to be "free from excessive force in the course

of an investigatory stop or other 'seizure' of the person." *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). Once the plaintiff establishes that a seizure occurred, the next inquiry is "whether the force used to effectuate the seizure was reasonable." *Beshers v. Harrison*, 495 F.3d 1260, 1266 (11th Cir. 2007). An objective standard governs whether an officer has used excessive force; the court asks what a reasonable officer would have done under the same circumstances. *Kesinger*, 381 F.3d at 1248 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

The right to make an arrest "carries with it the right to use some degree of physical coercion or threat." *Graham*, 490 U.S. at 396. To determine whether an officer's use of force was reasonable, a court must carefully balance the intrusion on the individual's rights against the government's interest  *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This "careful balancing" requires the court to consider such factors as the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (colloquially referred to as the "*Graham* factors"); *see also Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986) (holding that in determining if force was reasonable, courts must examine the need for the application of force, the proportionality of the need and amount of force used, and the extent of the injury inflicted).

The parties do not dispute that a seizure occurred, but Officer Moses argues that the video of the incident from his body camera clearly establishes that he did not use unreasonable force during the arrest. When "an accurate video recording *completely and clearly* contradicts a party's testimony, that testimony becomes incredible." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (emphasis added). Officer Moses contends that the video makes Mr. Glasscox's

7

allegations of excessive force implausible.

The video will simply not bear the weight Officer Moses places on it. It raises more questions than answers, and those questions are properly put to a jury. *See Ayers v. Harrison*, No. 14-12250, 2016 WL 3018690, at *2 (11th Cir. May 26, 2016) (affirming denial of judgment as a matter of law when"[e]ven with the video, the jury still had to make numerous and critical factual findings, including some based on credibility choices"). Here, a jury is necessary to make factual findings about the threat Mr. Glasscox posed, whether he was resisting arrest, and whether the force Officer Moses chose to deploy was proportionate and reasonable. None of the *Graham* factors weigh unequivocally in Officer Moses's favor.

First, the court considers the seriousness of the underlying offense. Mr. Glasscox's conduct was undoubtedly reckless and dangerous, but Officer Moses only charged him with misdemeanors under Alabama law. *See* Ala. Code. § 13A-10-41; § 32-5A-190; § 32-5A-193. However, "the government has a significant interest in enforcing the law on its own terms." *Buckley v. Haddock*, 292 F. App'x 791, 794 (11th Cir. 2008). Accordingly, the first factor is a stalemate. It supports neither Officer Moses nor Mr. Glasscox.

Next the court considers whether Mr. Glasscox posed a threat to the safety of Officer Moses or others. Officer Moses argues that Mr. Glasscox's driving "posed a lethal threat to himself, his fellow motorists, and [to himself]." (Doc. 19-1 at 8). However, viewing the facts in the light most favorable to Mr. Glasscox, that threat ceased, or at least diminished, when Mr. Glasscox stopped his vehicle. Officer Moses's use of force was not aimed at ending a dangerous highway pursuit.

Officer Moses testified that he administered the first tasing because Mr. Glasscox reached his right hand out of view. However, in the three additional tasings, Officer Moses could see Mr. Glasscox's hands. The threat posed to Officer Moses subsided over the course of the incident, but he continued to apply the same force. A jury could find such conduct unreasonable. *See Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("[R]esisting arrest without force does not connote a level of dangerousness that would justify a greater use of force."). Therefore, taking the facts in the light most favorable to Mr. Glasscox, the second factor supports a finding that Officer Moses used excessive force.

Finally, the court considers whether Mr. Glasscox was resisting arrest or otherwise attempting to elude capture. While Officer Moses correctly observes that Mr. Glasscox did not immediately comply with his instruction to exit the vehicle, Mr. Glasscox did comply with his order to raise his hands and unbuckle his seatbelt. Notably, Mr. Glasscox was being tased for approximately one-third of the time from when Officer Moses opened the door until Mr. Glasscox exited the vehicle.

A reasonable jury could draw a number of conclusions from these facts. A jury could draw a reasonable inference that Mr. Glasscox simply did not have the time to comply with the orders Officer Moses was issuing. A jury may also draw a reasonable inference that Mr. Glasscox's noncompliance was due to confusion or physical inability because he was being tased rather than belligerence, and did not warrant a repeated use of force. The simple truth is that the video does not settle the question of whether Officer Moses's actions were objectively reasonable. The video does not completely and clearly discredit Mr. Glasscox's allegations.

9

Therefore, the third factor, viewing the facts in the light most favorable to Mr. Glasscox, supports finding that Officer Moses used excessive force.

The extent of the plaintiff's injury also factors into the analysis. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (considering whether a taser inflicted serious injury as relevant to whether the force utilized by the officer was proportional and reasonable). Officer Moses argues that the only injury Mr. Glasscox suffered was "bleeding allegedly from the probes." (Doc 19-1 at 9). However, Mr. Glasscox's physician testified that he "has become severely depressed, anxious, and emotionally unstable" since the incident. (Doc 31-3 at 3). The doctor referred Mr. Glasscox for treatment for Post-Traumatic Stress Disorder. As evidenced by these competing characterization, the parties genuinely dispute the extent of Mr. Glasscox's injuries.

Whether an officer used excessive force is "necessarily [a] fact specific" inquiry. *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). Accordingly, the court must "slosh [its] way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). As another step in this journey, the court now considers how the facts of this case compare to other Eleventh Circuit cases.

The Eleventh Circuit has found several instances where an officer's use of a taser was not excessive force, but each case is distinguishable. For example, in *Draper v. Reynolds*, the Eleventh Circuit held that an officer did not use excessive force when he administered a *single tase* of an unrestrained suspect who was "hostile, belligerent, and uncooperative." 369 F.3d at 1278. Here in contrast, Officer Moses deployed his taser multiple times in a short interval, and,

10

viewing the facts in the light most favorable to Mr. Glasscox, on a suspect who was not hostile, belligerent, or uncooperative.

In *Mann v. Taser Int'l, Inc.*, the Eleventh Circuit held that an officer did not use excessive force when he tased an arrested suspect multiple times in the back of a police car. 588 F.3d 1291, 1306 (11th Cir. 2009). The suspect had kicked out the back window of the car and threw herself out of the car when officers opened the door. *Id.* at 1300. Such "violent" and "aggressive" behavior demonstrated that the suspect was a threat to the officers and herself. *Id.* Here, Mr. Glasscox's noncompliance was not of a violent or aggressive nature.

As evidence of the continuing threat Mr. Glasscox posed, Officer Moses points out that Mr. Glasscox attempted to remove the probes from his chest, reached towards Officer Moses, and held the taser when Officer Moses administered a contact tase. However, these actions could be construed as natural reactions to being tased and not deliberate, willful acts of threatening resistance. While bodily contact did occur, Mr. Glasscox appears limp, and does not seem to offer physical resistance. A reasonable fact-finder could watch the video and conclude that Mr. Glasscox's arm was flailing as a result of having just been tased rather than aggression towards Officer Moses.

Mr. Glasscox was not restrained when Officer Moses tased him, and Circuit precedents do "demonstrate that the point at which a suspect is handcuffed and poses no risk of danger to the officer is often the pivotal point for excessive-force claims." *Mobley v. Palm Beach Cnt'y Sheriff Dept.*, 783 F.3d 1347, 1356 (11th Cir. 2015) (internal citations omitted). However, this insight does not mean that an officer is incapable of using excessive force prior to restraining and neutralizing a suspect. The evidence here, taken in the light most favorable to Mr. Glasscox,

11

demonstrates that Officer Moses used a disproportionate amount of force relative to the threat Mr. Glasscox posed.

This case is factually more similar to the cases where the Eleventh Circuit has found that a plaintiff's constitutional right to be free from excessive force was violated. For example, in *Oliver v. Fiorino*, the Eleventh Circuit held that an officer who tased a person multiple times utilized force that "was grossly disproportionate to any threat posed." 586 F.3d 898, 907 (11th Cir. 2009). The officer approached an apparently mental unstable man who was standing in the median of a road. *See id.* at 902–03. The man was "very fidgety" but not belligerent with the officer. *Id.* at 902. The officer tried to get the man to walk across the street away from traffic. *Id.* at 903. The officer put his hand on the man's shoulder, who responded by backing away. *Id.* The man stopped in a lane of traffic and "babbled incoherently." *Id.* The officer tried to force the man across the street, but he pulled away. *Id.* While holding onto the man's shirt, the officer tased the man. *Id.* When the man tried to get up off the ground, the officer tased him again. *Id.*

Although the court acknowledged that the first tase arguably may have been justified, it noted that "the officers did not merely shock [the suspect] and then attempt to engage him, arrest him, or 'Baker Act' him," but instead continued to tase him. *Oliver*, F.3d at 906. While being tased, the suspect never "hit, kicked, punched, or threatened the officers." *Id.* at 903. The court concluded that the justification for the subsequent tasings was "minimal." *Id.* at 906.

The facts in this case, although somewhat different, are analogous. While some justification may have existed for the first tase because Officer Moses could not see what Mr. Glasscox was reaching for with his right hand, that justification faded when Officer Moses could see Mr. Glasscox's hands after the first tase. But Officer Moses continued to tase Mr. Glasscox,

12

even though Officer Moses's hand was on Mr. Glasscox's wrist. Officer Moses testified that the purpose of the tasing was to get Mr. Glasscox to comply with his order to exit the vehicle. Although Officer Moses states that Mr. Glasscox was preventing him from taking him into custody, the video does not show that to clearly be the case. Taking the facts in the light most favorable to Mr. Glasscox, there is a genuine issue of material fact over whether tasing Mr. Glasscox multiple times when he was not actively resisting was excessive force to accomplish this objective.

A right of force does accompany the right to arrest. However, such a right is not unqualified. Use of a taser is not excessive when use of other physical force or verbal commands would have "escalated a tense and difficult situation into a serious physical struggle." *Draper*, 369 F.3d at 1278. The video does not demonstrate completely and clearly that Officer Moses's use of force was reasonably calculated to avoid such a conflict. In fact, a reasonable interpretation of the events is that Officer Moses is the one who escalated the incident. In the court's view, *"a violation could be made out on a favorable view of the parties' submissions."* *Gonzalez*, 325 F.3d at 1234. Therefore, the question of whether Officer Moses's force was reasonable under the circumstances is properly reserved for a jury.

### 2.    Clearly Established

For a right to be considered clearly established, the unlawfulness of the act must be apparent "in the light of preexisting law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).[3]

---

[3]Officer Moses does not appear to dispute that Mr. Glasscox's rights and the relevant law are clearly established: "Since the Fourth Amendment contains a right to be free from excessive force the analysis in this case turns on whether or not Officer Moses' conduct violated Glasscox's right to be free from excessive force." (Doc. 19-1 at 4).

Apparent unlawfulness may be demonstrated in two ways. *Fils*, 647 F.3d at 1291. First, the court determines whether the right was clearly established under the relevant case law at the time of the incident. *Id*. A court considers whether a reasonable officer could have believed the conduct to be lawful given the relevant precedents. *Anderson*, 483 U.S. at 641. The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Second, a right is also clearly established if the conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law." *Fils*, 647 F.3d at 1291 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)).

The Eleventh Circuit has found that an officer's repeated use of a taser constituted excessive force with only minimal justification for the subsequent tasings. *Oliver*, 586 F.3d at 906. In *Oliver*, the Eleventh Circuit held that "it would be clear to every reasonable officer, even in the absence of case law, that . . . repeatedly tasering . . . over a two-minute period without warning . . . was excessive under the circumstances." *Id*. The Eleventh Circuit made this decision despite the fact that at the time, no decision had clearly established that disproportionate, repeated tasering was excessive force. *See Id*. at 907 ("[T]he force employed was so utterly disproportionate to the level of force reasonable necessary . . . any officer would have recognized that his actions were unlawful.") Given that the *Oliver* decision was established case law at the time of the incident, a reasonable officer in Officer Moses's situation should have known that utilizing a taser in the manner he did constituted excessive force under Circuit precedents.

**B.     State Law Assault and Battery Claims**

14

Officer Moses argues that Mr. Glasscox's state law assault and battery claims are barred under Alabama law by both the doctrines of state-agent immunity and peace-officer immunity. Under the state-agent immunity doctrine, an agent of the state is immune from civil liability when exercising judgment in enforcing the criminal laws of the state. *See Ex parte Kennedy*, 992 So. 2d 1276, 1280–81 (Ala. 2008). However, a state agent is denied immunity if he acted "willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000). These factors compose what is often termed the "*Cranman* test."

Officer Moses contends that his body camera video clearly establishes that he did not act in such a manner. The court disagrees. As the court has already discussed, a genuine dispute of material fact exists concerning whether Officer Moses utilized a proportionate and appropriate amount of force in his arrest of Mr. Glasscox. Because a question of fact exists regarding whether Officer Moses acted willfully or beyond his authority, he is not eligible for state-agent immunity under Alabama law.

Even if Mr. Glasscox's claims are not barred by state-agent immunity, Officer Moses argues they are precluded by the immunity afforded peace officers under Ala. Code § 6-5-338 (1975). Pointing to language in the statute providing immunity for performance of "any" discretionary function, Officer Moses argues that Alabama law differentiates between the judicially-created doctrine of state-agent immunity and the statutory protection afforded under § 6-5-338. Specifically, Officer Moses argues that peace-officer immunity must be broader than state-agent immunity, and that the limitations on eligibility for state-agent immunity are inapplicable to peace-officer immunity. Officer Moses reads § 6-5-338 to provide immunity to

15

any officer exercising *any* discretionary function, even if his actions were willful, malicious, in bad faith, or beyond his authority. Put simply, Officer Moses argues that *the Cranman* test is inapplicable to peace-officer immunity.

Officer Moses's argument has been roundly rejected by Alabama courts. The Alabama Supreme Court has explicitly stated that peace-officer immunity is analyzed "under the principles set forth in *Cranman*." *Swan v. City of Hueytown*, 920 So. 2d 1075, 1078 (Ala. 2005). Officer Moses cites *Lee v. Minue Stop, Inc.*, 874 So. 2d 505, 514 (Ala. 2003), for the proposition that state-agent and peace-officer immunity are analyzed under separate frameworks. However, the Alabama Supreme Court in *Swan* explicitly acknowledged *Lee* but declined to follow it. *See Swan*, 920 So. 2d at 1078 n.4.

When applying state law, federal courts "are bound by the decisions of the state supreme court." *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009). Therefore, the court finds that the same exceptions that exist for state-agent immunity exist for peace-officer immunity under Alabama law. Because a question of material fact exists regarding whether Officer Moses acted willfully or beyond his authority, Officer Moses is not entitled to summary judgment on Mr. Glasscox's state law claims based on peace-officer immunity.

## IV.    CONCLUSION

The court **DENIES** Officer Moses's Motion for Summary Judgment. (Doc. 19).


**DONE** this the 27th Day of September, 2016.

16

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE