FILED

2020 Sep-23  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DEBORAH GLASSCOX, as next friend of BOB GLASSCOX,** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **Case No. 2:15-CV-01487-KOB** |
| **CITY OF ARGO and OFFICER DAVID MOSES, in his individual capacity,** ) ) ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This § 1983 case arose from an incident in 2014 in which defendant Officer David Moses, as a police officer employed by defendant City of Argo, Alabama, allegedly used excessive force while arresting the plaintiff, Bob Glasscox. The parties have litigated the constitutional liability of Officer Moses for the incident underlying this case for over five years, both in this court and in the Eleventh Circuit. Now, for the first time in this case, this court must determine whether Mr. Glasscox can hold the City liable for Officer Moses's actions.

This question arises in the context of Officer Moses's second motion for summary judgment (doc. 80) and the City of Argo's motion for summary judgment (doc. 78). On appeal from this court's denial of Officer Moses's first motion for summary judgment, in which he requested qualified immunity, the Eleventh Circuit concluded both that a reasonable jury could find that Officer Moses violated Mr. Glasscox's right to be free from excessive force and that qualified immunity does not protect Officer Moses in this case. *Glasscox v. City of Argo*, 903 F.3d 1207, 1210 (11th Cir. 2018). Officer Moses comes to this court again requesting summary judgment. Officer Moses maintains that because a municipal court found Mr. Glasscox guilty of

several charges stemming from the incident, those convictions now preclude Mr. Glasscox from contesting the reasonableness of the force used by Officer Moses during the arrest. Alternatively, Officer Moses argues that Mr. Glasscox's § 1983 claim against him is not cognizable under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).

Officer Moses's new arguments do not persuade the court. As the court will discuss further below, Mr. Glasscox's convictions in the municipal court are almost certainly no longer valid under Alabama law, the invalidity of which forecloses both of Officer Moses's arguments. And even if they are valid, Officer Moses's arguments still fail.

Finally, as to the question of the City of Argo's liability for Officer Moses's actions, the court holds that a reasonable jury could conclude that the City of Argo showed deliberate indifference to Mr. Glasscox's constitutional right to be free from excessive force when it hired Officer Moses.

For these reasons, which the court discusses below, the court will **DENY** Officer Moses's second motion for summary judgment and will **GRANT IN PART** and **DENY IN PART** Argo's motion.

**Factual and Procedural Background**

**a. The Incident and Related Proceedings**

Both this court and the Eleventh Circuit have discussed at length the facts underlying Officer Moses's arrest of Mr. Glasscox. *See Glasscox v. City of Argo*, No. 2:15-cv-1487-KOB, 2016 WL 5390571, at *2–3 (N.D. Ala. Sept. 27, 2016); *Glasscox v. City of Argo*, 903 F.3d 1207, 1209–13 (11th Cir. 2018). In short, Officer Moses noticed Mr. Glasscox driving erratically at a high rate of speed on Interstate 59 South near Argo, Alabama. After pulling over Mr. Glasscox

and approaching his vehicle, Officer Moses deployed his taser on Mr. Glasscox four times while Mr. Glasscox was attempting to get out of the vehicle.

After the dust cleared, Mr. Glasscox, who has Type 1 diabetes, explained to Officer Moses that a hypoglycemic episode caused him to lose control of his vehicle, a fact which both the medics on the scene and Mr. Glasscox's treating physician confirmed. Officer Moses told Mr. Glasscox that he would not press criminal charges against him if his diabetes did indeed cause his erratic driving.

Contrary to his representations, Officer Moses filed several criminal complaints against Mr. Glasscox based on Mr. Glasscox's actions during the incident. (Doc. 82-1). A City of Argo municipal court found Mr. Glasscox guilty of four offenses based on the incident: reckless driving, reckless endangerment, attempting to elude police, and resisting arrest. After the municipal court entered its judgments of conviction, Mr. Glasscox exercised his right to a trial *de novo* in the circuit court pursuant to Ala. R. Crim. P. 30.1(a) and Ala. Code § 12-11-30(3).

Before Mr. Glasscox had his trial *de novo*, the circuit court judge found Mr. Glasscox incompetent to stand trial, because Mr. Glasscox suffers from dementia that had worsened during the pendency of his appeal. As such, the circuit court dismissed "the cases against" Mr. Glasscox *with prejudice*. (Doc. 82-3 at 2). *See* Ala. R. Crim. P. 11.6(c)(2)(ii).

In the meantime, Mr. Glasscox sued both Officer Moses and the City of Argo. As to Officer Moses, Mr. Glasscox claimed that he violated his Fourth Amendment right to be free from excessive force under 42 U.S.C. § 1983 (Count Two). Mr. Glasscox also brought a state-law assault and battery claim against Officer Moses (Count Three). Because of Mr. Glasscox's legal incompetence caused by his dementia, this court allowed him to substitute his wife, Deborah Glasscox, as his next friend in this litigation. (Doc. 55).

Mr. Glasscox claims, also under § 1983, that Argo has a general policy or custom of allowing its police officers to use excessive force with impunity (Count One). Mr. Glasscox also claims that Argo showed deliberate indifference to his constitutional rights when it hired Officer Moses (Count Four) and failed to train and supervise him (Count Five). Finally, Mr. Glasscox claims that Argo has an inadequate policy regarding the use of tasers (Count Six).

After Mr. Glasscox filed his suit, Officer Moses filed a motion to dismiss based on qualified immunity, which this court converted into a motion for summary judgment under Fed. R. Civ. P. 12(d). (Doc. 15). This court denied Officer Moses's first summary judgment motion and the Eleventh Circuit affirmed this court's denial of the motion. *Glasscox*, 903 F.3d at 1210. The Eleventh Circuit found that a reasonable jury could conclude that Officer Moses violated Mr. Glasscox's Fourth Amendment right to be free from excessive force and denied Officer Moses qualified immunity. *Glasscox*, 903 F.3d at 1217, 1220. The City of Argo also filed a motion to dismiss, which this court likewise denied as to Mr. Glasscox's substantive claims. *Glasscox v. City of Argo*, No. 2:15-cv-1487, 2016 WL 5391654, at *1 (N.D. Ala. Sept. 27, 2016).  Therefore, all of Mr. Glasscox's claims against both Officer Moses and the City of Argo remain for the court's consideration.

Finally, the state circuit court dismissed the cases against Mr. Glasscox on November 29, 2018, after the Eleventh Circuit denied Officer Moses qualified immunity. (Doc. 82-3 at 2).

**b. Officer Moses's Background in Law Enforcement**

Mr. Glasscox points to Officer Moses's history as a police officer to support his argument that a jury could find Argo liable under § 1983 for violating his constitutional rights by hiring Officer Moses.

4

Officer Moses has, to put it mildly, a checkered past in law enforcement. He began his law enforcement career in Tuscaloosa in 2003. While there, Officer Moses received several censures from the Tuscaloosa Police Department regarding his use of force. On one occasion, for example, Officer Moses brandished a shotgun while clearing a crowd from a nightclub parking lot. (Doc. 86-1 at 8). In a memo regarding the incident, a Tuscaloosa Police Department sergeant noted that Officer Moses used "a much more aggressive approach…than needed" in handling the situation, and that he "[showed] a *pattern* of using bad judgment dealing with situations involving moderate stress levels and tactics." (*Id*.) (Emphasis added).

In a similarly troubling incident, while off-duty and driving his personal vehicle, Officer Moses chased two college students for over twenty miles on the interstate at a high rate of speed before removing the students from their vehicle at gunpoint and forcefully arresting them. In a state-court assault and battery suit arising from the incident, the college students alleged that Officer Moses "push[ed], shov[ed], and handcuff[ed]" them in a "forceful manner." (Doc. 86-1 at 11). Officer Moses eventually settled the lawsuit with the college students (doc. 82-6 at 106), but the Tuscaloosa Police Department determined that these incidents showed that Officer Moses "has grossly poor judgment." (Doc. 86-1 at 7).

The Tuscaloosa Police Department eventually recommended Officer Moses's termination (doc. 87-1 at 100), and Officer Moses involuntarily resigned under investigation from the Tuscaloosa Police Department. (Doc. 86-1 at 24). In an "Employee Performance Appraisal" that the Tuscaloosa Police Department filled out regarding Officer Moses, a Tuscaloosa police captain noted that Officer Moses "has a tendency to overreact" and had demonstrated "several instances of using the wrong level of force." (Doc. 87-1 at 101).

After his brief stint in Tuscaloosa, Officer Moses worked for less than two months as a police officer for the City of Morris, Alabama. Officer Moses again resigned under an investigation, this time arising from a citizen's complaint that Officer Moses used martial arts "pressure points" on her during a traffic stop. (Doc. 86-1 at 31–32; doc. 87-1 at 1). Officer Moses, however, believed that the "conversation was completely innocent." (Doc. 86-1 at 32).

Officer Moses next worked for the City of Argo for the first time from February 2006 until the fall of 2007. During his first stint at Argo, the FBI investigated Officer Moses twice. Both investigations stemmed from complaints of excessive force lodged against Officer Moses. (Doc. 82-6 at 16). One of the FBI investigations involved the excessive force complaint of Mr. Jerry Joe Rich, who later filed a claim with the City of Argo regarding Officer Moses's actions. (Doc. 87-1 at 2).

In an affidavit accompanying the claim, Mr. Rich stated that, after his arrest by Officer Moses, he needed medical attention for "bruising to [his] body and eyes, cuts and scrapes from being tackled to the ground, an injured wrist, [and] burns to [his] eyes from [] pepper spray." (Doc. 87-1 at 2). A grand jury refused to indict Mr. Rich for any crimes related to the incident (doc. 82-6 at 59), and the City of Argo settled Mr. Rich's excessive-force claim for $45,000. (Doc. 87-1 at 10).

The City of Argo later terminated Officer Moses in the fall of 2007. Although neither Officer Moses nor Mr. Glasscox have produced much evidence showing why Argo fired Officer Moses, Officer Moses testified that the City of Argo terminated him because he "arrested two of the mayor's nephews for DUI." (Doc. 82-6 at 13).

Before working for Argo for a second time, Officer Moses briefly served in the Chilton County Sheriff's Department. While in Chilton County, Officer Moses received some negative

press in a local newspaper for shooting and killing one family dog and running over and killing

another. (Doc. 87-1 at 12–15). The Chilton County Sheriff's Department terminated Officer

Moses in February 2011 after, he alleges, he pulled over a Sheriff's Department employee in her

personal vehicle. (Doc. 82-6 at 44).

      After his termination from the Chilton County Sheriff's Department, Officer Moses then

returned to the City of Argo as a police officer in November 2012, the position he held during

the incident with Mr. Glasscox. James Downing, Argo's police chief, hired Officer Moses. Chief

Downing testified that Officer Moses did not fill out an application when Argo hired him for the

second time. (Doc. 82-10 at 28). Instead, Chief Downing hired Officer Moses the same day he

interviewed and merely verified that Officer Moses did not have a criminal record. (Doc. 82-6 at

55–56). Officer Moses does not claim that Chief Downing called any of the other police

departments that Officer Moses worked for or otherwise investigated his background before

Argo hired him, nor does Officer Moses contest that Argo had access to information about his

background before Chief Downing offered him the job.

      In sum, four different police departments, including Argo in 2007, either terminated

Officer Moses or allowed him to resign under investigation. Officer Moses's judgment as to the

necessary level of force led to his termination by at least one department, as the Tuscaloosa

Police Department expressly cited Officer Moses's judgment as to the use of force as a reason

for his termination. And Officer Moses settled two excessive force lawsuits while serving at two

different departments—including at Argo—before Argo hired him for a second time. The

incident with Mr. Glasscox occurred on July 24, 2014, during Officer Moses's second term of

employment as a police officer for the City of Argo.

Argo has now moved for summary judgment on Mr. Glasscox's § 1983 claims against it. (Doc. 78). Officer Moses has also moved for summary judgment, his second such motion in this case. (Doc. 80). Mr. Glasscox filed responses to both motions (docs. 84–85), to which Argo and Officer Moses filed a reply. (Doc. 88).

**Summary Judgment Standard**

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on

which a jury could reasonably find for the nonmoving party to defeat the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. Id. at 255.

Furthermore, the court must view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both sides have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

**Analysis**

Officer Moses argues in his second motion for summary judgment that Mr. Glasscox's municipal court convictions are still valid and that they preclude him from contesting the reasonableness of Officer Moses's force in this case. Alternatively, Officer Moses argues that Mr. Glasscox's municipal court convictions render his § 1983 claim against him non-cognizable under the *Heck* doctrine. *Heck v. Humphrey*, 512 U.S. 477 (1994). And Officer Moses again requests qualified immunity.

The City of Argo argues that it does not have a policy or custom of allowing its police officers to use excessive force, that it has an adequate policy governing its officers' use of tasers, and that it was not deliberately indifferent to Mr. Glasscox's constitutional rights when it hired and trained Officer Moses.

The court will address each defendant in turn.

**a. Officer Moses**

### *i. Issue Preclusion (Collateral Estoppel)*

Officer Moses first argues that Mr. Glasscox's municipal court convictions of resisting arrest and reckless endangerment preclude Mr. Glasscox from contesting the reasonableness of the force Officer Moses used in the underlying incident.

When considering the preclusive effect of a prior judgment or conviction, federal courts apply the law of the forum that entered the judgment or conviction, here, Alabama state law. *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008). Under Alabama law, the findings of fact and conclusions of law concomitant with a prior judgment or conviction have preclusive effect on subsequent proceedings when there exists "(1) an issue identical to the one litigated in the prior suit; (2) that…was actually litigated in the prior suit; when (3) resolution of the issue was necessary to the prior judgment; and when (4) the same parties" exist in the subsequent suit. *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990).

Although Alabama courts have not squarely addressed the question, Alabama law appears to allow a criminal conviction to have preclusive effect in a subsequent civil case, so long as the party invoking the doctrine establishes the requisite elements. *See White v. Maryland Cas. Co.*, 589 So. 2d 1294, 1295–96 (Ala. 1991) (performing preclusion analysis on underlying criminal conviction in subsequent civil suit but concluding conviction did not have preclusive effect).

For a prior proceeding to have preclusive effect in a subsequent proceeding, the prior proceeding must have resulted in a *final judgment*, as "the finality of judgments prohibit[s] a trial court from disturbing a final judgment." *Ex parte Americold Compressors Co*., 684 So. 2d 140, 144 (Ala. 1996) (citing *Louisville & Nashville R.R. v. Atkins*, 435 So. 2d 1275 (Ala. 1983)).

Officer Moses and Mr. Glasscox disagree as to whether Mr. Glasscox's convictions in the municipal court constitute "final judgments" for preclusion purposes. True, the municipal court did find Mr. Glasscox guilty of four offenses, including resisting arrest and reckless endangerment. But Mr. Glasscox claims that those convictions do not qualify as "final judgments" and accordingly have no preclusive effect on this suit because the circuit court dismissed the "cases" against him with prejudice after it found him incompetent to stand trial. Officer Moses, on the other hand, maintains that the municipal court convictions have preclusive effect in this case because Mr. Glasscox did not raise the incompetence issue in the municipal court and was competent to stand trial there. (Doc. 89 at 2). Notably, Officer Moses presents absolutely no authority for this proposition. In any event, the court agrees with Mr. Glasscox.

Under Alabama law, a criminal defendant may appeal a municipal court conviction for a trial *de novo* in the circuit court. Ala. R. Crim. P. 30.1(a); Ala. Code § 12-11-30(3). According to the Alabama Supreme Court, "a trial *de novo* is 'a new trial on the entire case—that is, on both questions of fact and issues of law—*conducted as if there had been no trial in the first instance.*'" *Ex parte Sorsby*, 12 So. 3d 139, 146 (Ala. 2007) (quoting Black's Law Dictionary 1544 (8th ed. 1990)) (emphasis added). The Alabama Supreme Court has further held that when a defendant exercises this right, the state must "retr[y] [him] *as if the municipal court conviction did not exist.*" *Ex parte Estate of Cook*, 848 So. 2d 916, 919 (Ala. 2002) (emphasis added). And after exercising the right to a trial *de novo* in the circuit court, the defendant does *not* have to show reversible error in the municipal court. Instead, the *government* must again prove the defendant's guilt beyond a reasonable doubt to a jury. *Estate of Cook*, 848 So. 2d at 919.

Mr. Glasscox did not need to raise the incompetence issue in the municipal court, because Alabama law did not require him to preserve any issues for appeal to the circuit court. *See Ex parte Sorsby*, 12 So. 3d at 145–46. Officer Moses's argument to the contrary therefore fails.

The decision of the Alabama Supreme Court in *Estate of Cook* further supports Mr. Glasscox's position. In *Estate of Cook*, the defendant died after a municipal court entered a conviction against him but before he received a complete trial *de novo* in the circuit court. *Estate of Cook*, 848 So. 2d at 916–17. The Alabama Supreme Court vacated the municipal court conviction, found that the appeal had abated, and concluded that the defendant's mere fact of filing the appeal rendered his underlying municipal court conviction a nullity. *Id*. at 919.

Similarly here, the circuit court found Mr. Glasscox incompetent to stand trial and properly dismissed the charges against him *with prejudice* pursuant to Ala. R. Crim. P. 11.6(c)(2)(ii), which requires the trial court to "dismiss the charges against the defendant" upon a finding of incompetence. And when Mr. Glasscox filed his appeal to the circuit court, the municipal court convictions became completely immaterial, as if the trial there never even happened.

The court therefore concludes that Mr. Glasscox's convictions in the municipal court are nullities under Alabama law and are thus not entitled to any preclusive effect in this case. Language emphasized by the Alabama Supreme Court in *Ex parte Sorsby* supports this conclusion in no uncertain terms:

> After appeal from a judgment of a justice of the peace [today, municipal or district courts] the *case* is to be tried in the circuit court *de novo*; or, in other words, *as if no trial had ever been had, and just as if it had originated in the circuit court.* The appeal when taken operates to annul and vacate the entire judgment of the justice of the peace, and not a part only of the judgment. *The judgment of the justice cannot upon the trial in the circuit court be looked to as a matter of evidence or of estoppel.*

*Ex parte Sorsby*, 12 So. 3d at 146 (quoting *Louisville & Nashville R.R. v. Lancaster*, 25 So. 733, 735 (Ala. 1899)) (emphasis added).

Even assuming for sake of argument that Mr. Glasscox's convictions in the municipal court still stand, the court will not give them preclusive effect as to the reasonableness of Officer Moses's force because the parties did not litigate that issue in the municipal court. Under Ala. Code § 13A-10-41, for example, "a person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself…." And under Ala. Code § 13A-6-24, "a person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." By their plain terms, neither of these offenses purport to allow a police officer to use excessive force to subdue a resisting or dangerous suspect. Even if Officer Moses arrested Mr. Glasscox for committing a crime for which he was arrested, Mr. Glasscox's guilt would not excuse the use of excessive force in doing so.

Mr. Glasscox could have truly been guilty of both offenses during the underlying incident *and* still have been the victim of excessive force from Officer Moses. Neither code provision gives a police officer *carte blanche* to violate a suspect's constitutional right to be free from excessive force. And the Eleventh Circuit found in this case that Mr. Glasscox sufficiently showed a genuine issue of material fact as to whether Officer Moses used excessive force during the incident, *even assuming the first two taser shocks were justified*; i.e., that Mr. Glasscox initially resisted Officer Moses's arrest attempts. *Glasscox*, 903 F.3d at 1214–15 ("the evidence shows that [Mr. Glasscox] offered no resistance at least after the second tasing, making Officer Moses's further use of the taser excessive under the circumstances").

Because the issues of whether Mr. Glasscox resisted arrest or "recklessly endangered" Officer Moses are not "identical" to the issue of whether Officer Moses used excessive force while arresting Mr. Glasscox, the court concludes that the municipal court convictions, even if valid, have no preclusive effect on Mr. Glasscox's § 1983 case. *See Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990).

In sum, Mr. Glasscox's municipal court convictions for reckless endangerment and resisting arrest are void under Alabama law. And even if they still stand, the parties did not litigate the reasonableness of Officer Moses's use of force in the municipal court. As such, the court will not give those convictions preclusive effect in this case.

### ii. Heck *Doctrine*

Officer Moses similarly argues that the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Mr. Glasscox's § 1983 suit against him.

The *Heck* doctrine bars § 1983 suits for damages that would "render a conviction or sentence invalid" when the § 1983 suit and the criminal conviction arise out of the same underlying incident. *Heck*, 512 U.S. at 486. In other words, when "a judgment in favor of the plaintiff [in a § 1983 suit] would necessary imply the invalidity of his conviction or sentence," the § 1983 claim is "*Heck*-barred." *Heck*, 512 U.S. at 487. Like the doctrine of collateral estoppel, the *Heck* bar works to promote consistency by preventing courts from entering logically incompatible judgments. *Heck*, 512 U.S. at 484–85.

But *Heck* only applies if the § 1983 plaintiff has a valid criminal conviction based on the events underlying the civil suit. *Heck*, 512 U.S. at 486 ("[a] claim for damages bearing that relationship to a conviction or sentence that has *not been…invalidated* is not cognizable under § 1983") (emphasis added). As shown above, Mr. Glasscox does not have any valid convictions

based on the incident with Officer Moses, so, by its clear terms, the *Heck* bar does not apply to his § 1983 claims.

Even if Mr. Glasscox's municipal court convictions for reckless endangerment and resisting arrest still stand, his success in this § 1983 claim would not "necessarily imply the invalidity" of either of them. *See Heck*, 512 U.S. at 487. The Eleventh Circuit expressly assumed in this case that Mr. Glasscox resisted arrest at first—conduct for which he was charged—but that Officer Moses still used excessive force. *Glasscox*, 903 F.3d at 1214–15. As such, Mr. Glasscox could have both committed the offense of resisting arrest and have been the victim of Officer Moses's use of excessive force in the same incident. *See Dyer v. Lee*, 488 F.3d 876, 882–83 (11th Cir. 2007) ("so long as the last act in the altercation was one of excessive force by the police, a § 1983 suit on that basis would not negate the underlying conviction" [for resisting arrest]).

And Mr. Glasscox may well have "recklessly endangered" the public by engaging in a high-speed chase down the interstate, but Mr. Glasscox's conduct likewise could have satisfied all elements of that offense before the physical confrontation with Officer Moses even began. Officer Moses incorrectly asserts that the municipal court convictions "are for the unlawful conduct [Mr. Glasscox] engaged in…which spanned the duration of his encounter with Officer Moses." (Doc. 81 at 12). Even if Mr. Glasscox's conduct was unlawful during the duration of the encounter with Officer Moses, Officer Moses's use of excessive force would not invalidate Mr. Glasscox's convictions. But the court reiterates that the Eleventh Circuit held that *any* unlawful conduct by Mr. Glasscox *did not span the duration of the encounter*. *Glasscox*, 903 F.3d at 1214–15 ("the evidence shows that *[Mr. Glasscox] offered no resistance* at least after the second

15

tasing, making Officer Moses's further use of the taser excessive under the circumstances")
(emphasis added).

Mr. Glasscox's § 1983 claim against Officer Moses is not *Heck*-barred, because Mr.
Glasscox has no conviction that this suit would invalidate. Even if he did, success in this suit
would not be logically inconsistent with any of his convictions.

### iii. Remaining Arguments

Officer Moses again requests qualified immunity from the § 1983 claim and state-agent
immunity from the state-law assault and battery claim.

These requests are utterly meritless. Other than the events surrounding Mr. Glasscox's
municipal court convictions and subsequent appeal, which the court has already addressed,
Officer Moses presents no new facts[1] that would change either this court's denial of state agent
immunity or the Eleventh Circuit's denial of qualified immunity. *Glasscox*, 2016 WL 5390571,
at *8 ("[b]ecause a question of fact exists regarding whether Officer Moses acted willfully or
beyond his authority, he is not eligible for state-agent immunity under Alabama law"); *Glasscox*,
903 F.3d at 1210 ("[w]e agree with the district court that at this stage of the case Officer Moses
is not entitled to qualified immunity").

Because Officer Moses has presented no new facts to call either of these holdings into
question, both constitute "the law of case, and [the court] will not reconsider the issue[s] in the
absence of new evidence." *Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 493 (11th Cir. 1993).

---

[1] After the Eleventh Circuit's decision, Officer Moses retained a "police practices" expert witness, John J. Ryan.
(Doc. 81 at 5). Mr. Ryan concluded that "the actions of Officer Moses throughout this event, including each TASER
deployment during this event, [were] consistent with generally accepted policies, practices, training, and legal
mandates trained to officers for application in field operations." (Doc. 81 at 5) (internal alterations omitted). Officer
Moses, however, does not argue that Mr. Ryan's testimony, standing alone, has any effect on either this court's or
the Eleventh Circuit's determination that a jury question exists as to the reasonableness of the force he used on Mr.
Glasscox. (*See* doc. 81 at 17–22). Officer Moses probably recognized that the expert's opinion does not negate the
jury question as to excessive force. *See United States v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992); *Samples v.
City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990).

For all these reasons, the court concludes that genuine issues of material fact still exist as to both of Mr. Glasscox's claims against Officer Moses (Counts Two and Three). As such, the court will **DENY** Officer Moses's second motion for summary judgment.

### b. City of Argo

Mr. Glasscox brings four § 1983 claims against the City of Argo. He alleges that the City has a policy or custom of excessive force generally (Count One), that it failed to screen Officer Moses before it hired him (Count Four), that it failed to adequately train and supervise Officer Moses (Count Five), and that it has an inadequate taser policy (Count Six).

The City first argues that Mr. Glasscox cannot hold it liable for his injuries because he has not shown an underlying constitutional deprivation by Officer Moses. (Doc. 79 at 1). But both this court and the Eleventh Circuit have found that a reasonable jury could conclude that Officer Moses violated Mr. Glasscox's Fourth Amendment right to be free from excessive force, as the court discussed above. Because the City has presented no new facts to disturb either holding, the court concludes that an underlying constitutional deprivation exists for which it could face § 1983 liability. Accordingly, the court will consider whether Mr. Glasscox has presented enough evidence to impose § 1983 liability upon the City of Argo.

Perhaps no point of federal law is more well-settled than the proposition that § 1983 liability will not attach to a municipality under the doctrine of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978); *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Instead, the *municipality itself* must have deprived the plaintiff of his constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).  To show this causal link and establish the municipality's liability, the plaintiff must show that the

municipality's "policy or custom" was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694–95.

Because the United States Supreme Court has established varying standards governing municipal liability depending on the nature of the municipal failure alleged by the plaintiff, the court will examine each of Mr. Glasscox's claims against the City of Argo in turn.

### i. Policy or Custom of Excessive Force Generally

The first method through which a plaintiff may recover from a municipality under § 1983 is by showing that the municipality has either an express policy or a custom of constitutional violations of the type suffered by the plaintiff. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307–08 (11th Cir. 2001). Because most municipalities do not have express policies directing their employees to violate the constitutional rights of people within their jurisdiction, most plaintiffs attempt to impose § 1983 liability on municipalities under a theory that the municipality in question has a *custom* of such violations. *See Griffin*, 261 F.3d at 1308.

"To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a *widespread practice* that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Griffin*, 261 F.3d at 1308 (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)) (emphasis added) (internal quotation marks omitted). Additionally, "a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin*, 261 F.3d at 1308 (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).

18

And finally, "proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality" under such a theory. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). Instead, "a pattern of similar constitutional violations is ordinarily necessary." *Craig*, 643 F.3d at 1310 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)) (internal quotation marks omitted).

Mr. Glasscox presents no evidence that the City ignored a pattern of the use of excessive force by officers *within its department*. Instead, Mr. Glasscox's response brief and evidentiary submissions show only that *Officer Moses himself* has a history of such violations, all but two of which occurred while he worked for other municipalities. While relevant to the question of whether the City should have hired Officer Moses, which the court discusses below, this evidence does not establish that the City had a "longstanding and widespread practice" of condoning excessive force such that it became its custom. *Craig*, 643 F.3d at 1310. *See Church v. City of Huntsville*, 30 F.3d 1332, 1345 ("random acts or isolated incidents [of excessive force] are insufficient to establish a custom or policy") (quoting *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)).

And Mr. Glasscox does not contend that the City had an express policy directing its officers to use excessive force. But "in the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiff must show that [a] policy itself is unconstitutional." *Craig*, 643 F.3d at 1311 (quoting *Estate of Novack ex rel. Turbin v. Cty. Of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

Because Mr. Glasscox has not shown that the City of Argo had either an express policy directing its officers to use excessive force or a custom of condoning or allowing such violations,

he has not met his burden of showing a genuine issue of material fact as to Count One, "§ 1983 Excessive Force Count Against City of Argo." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). As such, the court will **GRANT** Argo's motion as to Count One.

### ii. Failure to Screen

Plaintiffs can also recover from municipalities under § 1983 through a "failure to screen" theory. [2] *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397 (1997). The Supreme Court in *Bryan County* made clear that § 1983 may—in certain narrow circumstances—impose liability on a municipality for failing to screen the background of a job applicant who then, under color of law, violates the constitutional rights of a third party. *Bryan Cty.*, 520 U.S. at 411.

But because § 1983 only imposes constitutional liability on municipalities for their *own* wrongful acts, a plaintiff who seeks to recover from a municipality based on a single instance of failure to screen must prove both fault and causation. *Bryan Cty.*, 520 U.S. at 405. In the context of the *Monell* framework, the plaintiff must make these showings to establish that the hiring decision constituted the "policy" of the municipality. *Bryan Cty.*, 520 U.S. at 404–05.

To show fault, the plaintiff must establish that the municipal policymaker who made the hiring decision showed "deliberate indifference" to the constitutional rights of the plaintiff. *Bryan Cty.*, 520 U.S. at 411. In the words of the Supreme Court,

> [o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the *plainly obvious consequence* of the decision to hire the applicant would be the deprivation of a third party's federal protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'

---

[2] Argo contends that Mr. Glasscox's hiring-based § 1983 claim fails because it is based on negligence, which is not actionable under § 1983. But this court has already determined that Mr. Glasscox pled this claim properly. *See Glasscox v. City of Argo*, No. 2:15-cv-1487-KOB, 2016 WL 5391654, at *3 (N.D. Ala. Sept. 27, 2016).

*Bryan Cty.*, 520 U.S. at 411 (emphasis added).

And to establish causation, the plaintiff must establish that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Bryan Cty.*, 520 U.S. at 412 (emphasis in original).

The Supreme Court has directed courts to carefully "test the link" between the policymaker's hiring decision and the plaintiff's injury. *Bryan Cty.*, 520 U.S. at 412. This important requirement prevents municipal liability under § 1983 from "collaps[ing] into *respondeat superior* liability" and ensures that courts adhere to Congress's intention that municipalities only face liability if their "deliberate action…directly caused a deprivation of federal rights." *Bryan Cty.*, 520 U.S. at 415.

In *Bryan County*, for example, the plaintiff failed to meet this rigorous standard. The plaintiff claimed that the municipality violated her right to be free from excessive force by hiring the officer who violated her right; but she established only that municipality hired the officer in question despite his background of "various misdemeanor infractions," including driving offenses and charges that stemmed from a fight in college. *Bryan Cty.*, 520 U.S. at 413–14. The Supreme Court concluded that although these charges may have made the officer "an extremely poor candidate" for his position, they did *not* establish that his use of excessive force constituted the "plainly obvious consequence of the hiring decision." *Bryan Cty.*, 520 U.S. at 413–14. The hiring Sheriff's inadequate scrutiny of the officer's background thus did not constitute deliberate indifference to the plaintiff's constitutional rights. *Bryan Cty.*, 520 U.S. at 414.

In *Griffin v. City of Opa-Locka*, on the other hand, the Eleventh Circuit found sufficient evidence to support a municipality's § 1983 liability on a failure-to-screen theory. *Griffin*, 261

F.3d at 1313. In *Griffin*, the plaintiff sought to recover from a city under a failure-to-screen theory after the city's manager sexually harassed her. *Id*. at 1313. In finding enough evidence to support the city's liability, the court pointed to the fact that the city hired the harasser "without a resume, interview, background check, or any discussion of his qualifications." *Id*. Additionally, concerned individuals "inundated [the city] with articles, faxes, and mail, warning of [the harasser's] problems with sexual harassment and dealings with women." *Id*. at 1314. And finally, the city had actual knowledge that the harasser was harassing city employees. *Id*.

The court concluded that because "a cursory check into [the harasser's] prior employment history would have…alerted the City to prior complaints…with regard to sexual harassment," and because "[t]he City apparently ignored its own policy of telephoning prior employers to conduct a background search and did not obtain [his] employment files prior to hiring him" for a permanent position, the City showed deliberate indifference to the plaintiff's rights when it hired the harasser. *Griffin*, 261 F.3d at 1314.

In this case, the court finds that Mr. Glasscox has met his heavy burden of showing that a reasonable jury could conclude that the City of Argo was deliberately indifferent to his constitutional right to be free from excessive force when it hired Officer Moses. Officer Moses received complaints regarding his use of force while working at multiple law enforcement departments—including at the City—before the City hired him for the second time. Other departments had expressed concern about Officer Moses's judgment as to the use of force. And importantly, the City either knew or could have found out about Officer Moses's history as to the use of force.

The Tuscaloosa Police Department, for example, explicitly stated that Officer Moses has "grossly poor judgment" (doc. 86-1 at 7), noted that he had demonstrated "several instances of

22

using the wrong level of force" (doc. 87-1 at 101), and expressed concern that he "has a tendency to overreact." (Doc. 87-1 at 101).  Indeed, this conduct led to an excessive force lawsuit against Officer Moses, which he settled, after he chased two college students in his personal vehicle and forcibly arrested them.

And after the incident in Tuscaloosa in which Officer Moses brandished a shotgun in a crowd control situation, a Tuscaloosa Police Department sergeant noted that Officer Moses used "a much more aggressive approach…than needed" in handling the situation, and that he "[showed] a *pattern* of using bad judgment dealing with situations involving moderate stress levels and tactics." (Doc. 86-1 at 8) (emphasis added).

But the most troubling thing about the City's decision to hire Officer Moses for the second time is the procedure—or lack thereof—Chief James Downing[3] used to hire Officer Moses. The City does not claim that it did not have access to information about Officer Moses's background. In fact, Mr. Glasscox has presented evidence that it had ready access to such information, because the Tuscaloosa Police Department submitted Officer Moses's termination documents to the Alabama Peace Officers Standards and Training Commission (APOST) database. (Doc. 86-1 at 22-24).

Instead, Chief Downing testified that he would hire any applicant that had worked for the Argo Police Department in the past so long as that applicant was in good standing with the Alabama Peace Officers Standards and Training Commission. (Doc. 82-10 at 12). And as Mr.

---

[3] The parties do not contest that Chief Downing was Argo's final "policymaker" as to police officer hiring decisions. Although the Argo City Council technically made the final hiring decisions as to police officers, Mr. Glasscox has presented evidence that the Argo City Council merely "rubber-stamped" Chief Downing's hiring recommendations. (Doc. 82-10 at 10). *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1293 (11th Cir. 2004) ("If a higher official has the power to overrule a decision but as a practical matter never does so, the decision maker may represent the effective final authority on the question") (quoting *Bowen v. Watkins*, 669 F.2d 979 (5th Cir. 1982)).

Glasscox points out, the only way a police officer can fall out of good standing with APOST is through an arrest. (Doc. 82-11 at 10).

As to the specifics of Chief Downing's decision to hire Officer Moses, Mr. Glasscox has shown that Officer Moses may not have even filled out an application and that Chief Downing hired him on the same day of the interview after only checking his background for criminal charges. (Doc. 82-6 at 55–56). Chief Downing testified that the City's need for a police officer motivated the speediness of his hiring procedures. (Doc. 82-10 at 25).

Further, Mr. Glasscox has shown that Chief Downing had actual knowledge of Jerry Joe Rich's excessive force claim against Officer Moses and the subsequent settlement. Shortly after the City hired Officer Moses for the second time, Officer Moses and Chief Downing discussed Mr. Rich's claim against Officer Moses. (Doc. 82-6 at 29). In this discussion, Chief Downing—who worked for the City as a police officer when the incident between Officer Moses and Mr. Rich took place—remarked, "[y]ou know they ended up paying that idiot [Rich] blank amount of money." (Doc. 82-6). And finally, Chief Downing testified that he did not ask Officer Moses why the City fired him for the first time and did not otherwise inquire about his background before he hired him. (Doc. 82-6 at 37).

Chief Downing's remark regarding Mr. Rich's claim, coupled with his utter failure to perform even a cursory check into Officer Moses's background beyond merely checking for arrests or criminal charges, leads this court to conclude that Mr. Glasscox has satisfied *Bryan County*'s rigid standard of municipal culpability. *Bryan Cty.*, 520 U.S. at 411. The court determines on these facts that Mr. Glasscox has presented sufficient evidence from which a jury could conclude that Officer Moses's use of excessive force on Mr. Glasscox would be the "plainly obvious consequence" of hiring him. Accordingly, Mr. Glasscox has shown that a

genuine issue of material fact exists as to whether the City showed deliberate indifference to his constitutional rights when it hired Officer Moses. *Bryan Cty.*, 520 U.S. at 411.

The testimony of former Argo police chief Wilbur Lee supports the court's conclusion. After reviewing Officer Moses's history in law enforcement, Mr. Lee agreed that Officer Moses "has a problem policing" and confirmed that he "[didn't] want people like that on the police force." (Doc. 82-11 at 23).

Like the city in *Griffin*, the City of Argo had access to the information about Officer Moses's history of poor judgment as to the force and the complaints and lawsuits filed against him. The City of Argo itself even settled an excessive force claim against him. Standing alone, the prior excessive force claim against Officer Moses that the City of Argo settled during his first term of employment may not satisfy *Bryan County*'s exacting standard of culpability. But Officer Moses received complaints about his use of force at almost every law enforcement department where he ever worked, and the Tuscaloosa Police Department expressed serious concerns about his judgment as to the use of force. But Chief Downing did not even do the bare minimum and pick up the phone to call Officer Moses's previous employers.

The court also concludes that Mr. Glasscox has presented enough evidence to satisfy *Bryan County*'s causation standard. *Bryan Cty.*, 520 U.S. at 412. A jury could find a strong connection between Officer Moses's background of poor judgment as to the use of force and the violation alleged by Mr. Glasscox: that Officer Moses subjected him to excessive force. *Id.* Unlike the officer at issue in *Bryan County*, who had a history of only driving violations and charges from a fight in college, a jury could find that Officer Moses has a history of subjecting to excessive force the citizens he was charged to serve. Indeed, Officer Moses is much more like the city manager at issue in *Griffin* who had a history of sexual harassment: Officer Moses has a

history of excessive force complaints; unsurprisingly, he subjected Mr. Glasscox to excessive force.

So after "testing the link" between Officer Moses's history and the incident with Mr. Glasscox, *Bryan Cty.*, 520 U.S. at 412, the court concludes that this is the rare case where a strong link exists. If Chief Downing had adequately scrutinized Officer Moses's background, a jury could find that he should have concluded that Officer Moses was highly likely to subject someone to excessive force.

The City counters that it did not cause Officer Moses's deprivation of Mr. Glasscox's federally-protected rights because the prior excessive-force claims against Officer Moses lacked merit; so its failure to screen Officer Moses's background did not constitute deliberate indifference. (Doc. 79 at 8–9). The City only cites one published Eleventh Circuit opinion for this proposition. *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987). In *Brooks*, the court concluded that the mere fact that an officer has received many excessive force complaints does not put a municipality on notice of a custom of excessive force within its police department, because the "number of complaints bears no relation to their validity." *Brooks*, 813 F.2d at 1193.

Specifically, the court in *Brooks* pointed out that disgruntled arrestees filed many of the complaints as a means of harassing a particular officer who patrolled a high-crime area. Further, the city in *Brooks* showed that "each complaint was fully investigated and found to be lacking in merit." *Brooks*, 813 F.2d at 1193.

The court finds *Brooks* distinguishable from this case for several reasons. First, unlike the plaintiff in *Brooks*, Mr. Glasscox does not rely on the mere number of excessive force complaints against Officer Moses to show the City's deliberate indifference. Instead, he uses a variety of evidence, including the fact that the Tuscaloosa Police Department *itself* had serious

26

concerns about Officer Moses's use of force and that the City of Argo had access to this information. Additionally, Mr. Glasscox has shown that Argo's former police chief agreed that Officer Moses "has a problem policing" and confirmed that he "[didn't] want people like that on the police force." (Doc. 82-11 at 23).

Second, the city in *Brooks* presented evidence that it fully investigated each excessive force complaint against the officer and found them all meritless. *Brooks*, 813 F.2d at 1193. The City of Argo has presented no such evidence. To the contrary, Mr. Glasscox has established that the City did not even do the bare minimum to investigate Officer Moses's background, let alone fully investigate every excessive force claim filed against him.

And finally, the excessive force complaints lodged against Officer Moses appear to have at least some merit. For one thing, neither Mr. Rich nor the college students Officer Moses arrested were charged with any crimes underlying their interactions with Officer Moses, but Officer Moses still forcefully arrested both of them. Instead, local law enforcement let the college students go, and a grand jury refused to indict Mr. Rich for resisting arrest. So, unlike the complainants in *Brooks*, the City has not shown that either Mr. Rich or the college students Officer Moses arrested were "experienced 'customers'" who were "continuously in trouble with the law" and were using their complaints to harass Officer Moses. *Brooks*, 813 F.3d at 1193.

The City also argues for the first time in its reply brief that Fed. R. Evid. 404(b) bars evidence of Officer Moses's prior bad acts. As this court has repeatedly held, "new arguments are improper if presented for the first time in a reply brief." *Dates v. Frank Norton, LLC*, 190 F. Supp. 3d 1037, 1040 (N.D. Ala. 2016) (citing *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)). Accordingly, the court declines to consider this argument.[4]

---

[4] Procedural defects aside, the substance of this argument also lacks merit. As the Eleventh Circuit in *Griffin* put it, Officer Moses's prior acts of excessive force at other departments "of which [the City of Argo] was aware or should

In sum, the court concludes that Mr. Glasscox has established a genuine issue of material fact as to whether the City of Argo was deliberately indifferent to his constitutional rights when it hired Officer Moses. As such, the court will **DENY** the City's motion as to Count Four, the City of Argo's § 1983 liability for failure to screen Officer Moses's background before hiring him.

### iii. Failure to Train/Supervise

Municipalities can also face § 1983 liability for failing to train or supervise an employee who subsequently commits a constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). But the Supreme Court has warned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)).

To hold a municipality liable for failing to train or supervise a police officer who subsequently violates the plaintiff's constitutional rights, the plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton*, 489 U.S. at 388–89)). And deliberate indifference in this context demands "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)).

---

have been aware is critical to the determination whether a reasonable background investigation would have made it plainly obvious that" Officer Moses would use excessive force on citizens if hired by the City of Argo. *Griffin*, 261 F.3d at 1314–15.

Mr. Glasscox argues that the same incidents in Officer Moses's past that should have kept the City from hiring him also should have put it on notice that it needed to "provide extra supervision or training" to Officer Moses as to proper use of force. (Doc. 84 at 24). But this argument's focus on *Officer Moses's* prior incidents of using of excessive force, many of which took place while he worked at other law enforcement departments, shows a misunderstanding of the proper point of inquiry.

As the Supreme Court has held, to establish deliberate indifference in the training and supervision context, the plaintiff must present evidence that the municipality's policymakers "[continue to adhere to] an approach that they know or should know has failed to prevent tortious conduct by employees." *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 409)). In other words, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chose[n] a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Mr. Glasscox has failed to present any evidence that the City of Argo "deliberately chose" an insufficient training program as to the use of force for its police department. *Connick*, 563 U.S. at 61. Mr. Glasscox, for example, has not shown that any other officers in the Argo police department demonstrated a pattern of using excessive force, but such a showing "is ordinarily necessary" to establish a municipality's deliberate indifference to a training program. *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 410)). Instead, Mr. Glasscox's two-page argument merely regurgitates the same evidence he presented in his failure-to-screen argument. (Doc. 84 at 24–25). But the Argo Police Department did not train Officer Moses when he worked at other departments, so his history at those departments bears no relevance to the sufficiency of *Argo's* training program.

At most, Mr. Glasscox has shown that Officer Moses used excessive force on two prior occasions while employed at Argo in his arrest of Jerry Joe Rich and in another incident, which led to an FBI investigation. But two prior occasions of excessive force committed by the same officer do not constitute a "pattern" of misconduct within the department as to put the City of Argo on notice of a possible deficiency in *its* police training program. *Connick*, 563 U.S. at 62. Mr. Glasscox has simply not pointed the court to any deficiency in the training program the Argo Police Department administered to its officers. Indeed, Mr. Glasscox presents no evidence as to the details of the Argo Police Department's training program; instead, the foundation of his argument is that the Argo Police Department should have given Officer Moses "extra training or supervision" because of his history as to the use of force. (Doc. 84 at 24).

But unlike in the hiring context, where a municipality may face § 1983 liability for failing to scrutinize an applicant's background, a plaintiff must show that a municipality demonstrated deliberate indifference *to its training program* to face § 1983 liability for failure to train. As the Northern District of Georgia noted, "a police officer's non-compliance with training is *an individual fault* and does not demonstrate the requisite deliberate indifference needed to sustain a claim of municipal liability for failure to train." *Favors v. City of Atlanta*, No. 1:17-cv-03996-SDG, 2020 WL 4260631, at *10 (N.D. Ga. July 23, 2020) (citing *Campbell v. City of Phila.*, 927 F. Supp. 2d 148, 174 (E.D. Pa. 2013)) (emphasis added).

And Mr. Glasscox's argument based on Officer Moses's history fails for another reason: the Supreme Court has explicitly held § 1983 will not impose liability upon a municipality simply because "a *particular officer* may be unsatisfactorily trained." *City of Canton*, 489 U.S. at 390 (citing *Springfield v. Kibbe*, 480 U.S. 257, 268 (1987) (O'Connor, J., dissenting)) (emphasis added). And to the extent Mr. Glasscox argues that the City of Argo could have prevented his

injury by providing "extra supervision or training to Moses," (doc. 84 at 24), the law of § 1983 holds that "[it will not suffice] to prove that an injury or accident could have been avoided if an officer had had *better or more training*, sufficient to equip him to avoid the particular injury causing conduct." *City of Canton*, 489 U.S. at 391 (emphasis added).

Finally, Mr. Glasscox's reliance on this court's decision in *Nolin v. Town of Springville* is misplaced. 45 F. Supp. 2d 894, 908–09 (N.D. Ala. 1999); *rev'd in part on other grounds*, *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000). In *Nolin*, this court denied summary judgment to the Town of Springville on the plaintiff's claim that, like here, the police department showed deliberate indifference to his constitutional right to be free from excessive force when it failed to train or otherwise take disciplinary action against the offending police officer. The officer in *Nolin* had four excessive force claims filed against him while working for the Town of Springville before the incident with the plaintiff. *Nolin*, 45 F. Supp. 2d at 908–09.

But this court issued its decision in *Nolin* in 1999. The Supreme Court has since clarified the stringent standard under which a plaintiff may hold a municipality liable under a failure-to-train theory. *Connick*, 563 U.S. at 61–62. In 2011, the Supreme Court in *Connick* held that a plaintiff generally must show that "policymakers are on actual or constructive notice that a *particular* omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61–62 (emphasis added). Because Mr. Glasscox has not pointed to a *particular* deficiency in the Argo Police Department's training program, his failure-to-train claim fails under more recent Supreme Court precedent regardless of earlier decisions by this court.

And the court finally notes that *Nolin* is distinguishable from this case on its facts as well: the officer in *Nolin* had four prior complaints *at the same department*. *Nolin*, 45 F. Supp. 2d at

908–09. Officer Moses had only two prior complaints at Argo. Because Officer Moses received most of his excessive force complaints while employed at other departments, the court finds that a reasonable jury could not conclude that defects in the City of Argo's police training program caused Mr. Glasscox's injuries.

As such, because Mr. Glasscox has failed to prove that the City of Argo's training and supervision policies of police officers constituted the "moving force" behind Officer Moses's constitutional violation, *Monell*, 436 U.S. at 694–95. A finding to the contrary would essentially subject the City to *respondeat superior* liability, which is forbidden. *Connick*, 563 U.S. at 62.

For these reasons, the court will **GRANT** Argo's motion for summary judgment as to Count Five, § 1983 liability for failure to train or supervise Officer Moses.

### iv. Inadequate Taser Policy

Although Mr. Glasscox brought a § 1983 claim against the City based on its alleged failure to adopt an adequate taser policy, Mr. Glasscox did not defend this claim in his response to the City's motion for summary judgment. (*See* Doc. 84). Consequently, the court finds that Mr. Glasscox has abandoned this claim. *See Adams v. Bank of Am, N.A.*, 237 F. Supp. 3d 1189, 1203 (N.D. Ala. 2017) ("[a] party that fails to defend a claim that is targeted by a summary judgment motion is deemed to have abandoned that claim") (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) and collecting cases).

Accordingly, the court will **GRANT** Argo's motion as to Count Six, Inadequate Policy.

**Conclusion**

The fact that Chief Downing did not even make a bare minimum check of Officer Moses's background troubles the court. Although the court is cognizant of the hiring issues

facing small-town police departments, those troubles do not absolve them of the duty to protect their citizens by making responsible hiring decisions.

      For the reasons discussed above, the court will **DENY** Officer Moses's second motion for summary judgment (doc. 80) and will **GRANT IN PART** and **DENY IN PART** Argo's motion for summary judgment (doc. 78). The court will enter such an order contemporaneously with this opinion.

      **DONE** and **ORDERED** this 23rd day of September, 2020.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE